### BENHAM v. BENHAM.

(Supreme Court, Special Term, Dutchess County. November 21, 1910.)

DIVORCE (§ 326*)—FOREIGN DECREES—EFFECT.

Where the matrimonial domicile of husband and wife was in a sister state, where they resided together in good faith, making that state their home, a decree of divorce by a court of that state, rendered in a suit by the husband on personal service of the wife in New York, where she resided after her abandonment of the husband in the sister state, is valid in New York, and bars an action for divorce by the wife in New York.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 827–830; Dec. Dig. § 326.*]

Action by Susan Vanwyck Benham against Wesley Hamilton Benham. Demurrer to answer overruled.

Morschauser & Hoysradt, for plaintiff.
Lewis & Carroll, for defendant.

TOMPKINS, J. This is a demurrer by the plaintiff to the defendant's answer upon the ground that it is insufficient in law upon the face thereof.

The admitted facts are that the plaintiff and defendant were married on the 2d day of September, 1896, at Fishkill, in the state of New York, and that in the month of September, 1898, the plaintiff and defendant, who were then living together, moved to St. Albans, Franklin county, Vt., where the defendant became rector of St. Luke's Church. They lived together as husband and wife at St. Albans, in the state of Vermont, until the 15th day of June, 1904, a period of six years, when the plaintiff abandoned the defendant and left her home, and went to Fishkill, in the state of New York, and never returned to the defendant or to their home in Vermont. On the 15th day of August, 1906, while the defendant was still residing at St. Albans, in the state of Vermont, he instituted an action for a divorce against the plaintiff in the county court of Franklin county in the state of Vermont. The summons and complaint in that action were served upon the defendant (the plaintiff in this action) personally at Poughkeepsie, Dutchess county, N. Y., on the 21st day of August, 1906, pursuant to an order duly made by a judge of the Supreme Court of the state

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of Vermont, under a statute of that state, which provides for such service upon a nonresident defendant. The complaint in that action alleged as a ground for absolute divorce intolerable severity, which under the statute of Vermont was a sufficient ground for an absolute divorce. The service of the summons and complaint in that Vermont action was duly and regularly made upon the plaintiff herein, who, however, did not appear or defend said action, and in the month of September, 1906, after a hearing duly had in the said county court in Franklin county, Vt., the defendant herein was granted an absolute divorce, and judgment therefor was duly made and entered in Franklin county aforesaid. Thereafter the defendant herein married another woman within the state of New York, and is now living with her at Buffalo in this state, and this action is brought by the former wife for an absolute divorce, alleging the defendant's adultery with the woman with whom he is now living as his wife in the city of Buffalo. The answer sets up as a defense to the plaintiff's cause of action the judgment granted in his favor against the plaintiff herein by the county court of Franklin county, in the state of Vermont, and the question upon this demurrer is whether that judgment in the husband's favor is good and effective in this state against the wife. In other words, whether the judgment of the Vermont court is entitled to full faith and credit in this state, under section 1 of article 4 of the federal Constitution.

The plaintiff's counsel argues and insists that the Vermont court did not acquire jurisdiction of the person of the defendant, because at the time the action was commenced she was not an actual resident of that state, but was residing at Fishkill, in the state of New York, where the summons was served upon her, and that such service did not confer jurisdiction upon the Vermont court, and cites the case of Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, in support of his contention. In that case it was held that the mere domicile within the state of one party to the marriage does not give the courts of that state jurisdiction to render a decree of divorce enforceable in all the other states by virtue of the full faith and credit clause of the federal Constitution against a nonresident who did not appear, and was only constructively served with the notice of the pendency of the action, and that:

"Where a personal judgment has been rendered in the courts of a state against a nonresident merely upon constructive service, and therefore, without acquiring jurisdiction over the person of the defendant, such judgment may not be enforced in another state; indeed, personal judgment so rendered is, by operation of the due process clause of the 14th amendment, void as against the nonresident, even in the state where rendered, and therefore, such nonresident in virtue of rights granted by the Constitution of the United States, may successfully resist, even in the state where rendered, the enforcement of such a judgment." ·

In that case, however, the defendant was not and never had been a resident of the state of Connecticut, in which the action was brought, and the judgment rendered, and the plaintiff apparently went into that state for the purpose of acquiring a residence to enable him to bring an action against his wife, who was a resident of the state of New

York, and the court held that the wife, being domiciled in the state of Connecticut, was not bound by the judgment in that state, which was based upon constructive service of the summons only, and in which action she did not appear. That is the rule that has been laid down in other cases, and it is now well estsablished that no valid decree of divorce can be made on constructive service by the courts of a state in which the defendant is not domiciled; but the case at bar is not such a case. Here the plaintiff and defendant moved to St. Albans, Vt., in September, 1898, and the case of Atherton v. Atherton, 181 U. S. 155, 21 Sup. Ct. 544, 45 L. Ed. 794, seems to be decisive of this demurrer. In that case the plaintiff, Mary G. Atherton, was married in 1888 to the defendant in Clinton, N. Y. After the marriage of the parties, they took up their residence in Louisville, Ky. In 1891 the plaintiff left her husband's house permanently, taking their child with her. But, before departing for the state of New York, she entered into a certain agreement with the defendant, Peter Atherton, with reference to providing for her support, and thereafter departed from Kentucky, and came to the state of New York, as the Trial Court found in that case, with the intention of changing her residence and domicile from Kentucky to New York. In December, 1892, the defendant commenced an action ag·inst the plaintiff, Mary G. Atherton, in Kentucky, for an absolute divorce, alleging that she had abandoned him in October, 1891, and that such abandonment had continued for a period of more than a year. Under the statutes of Kentucky, a statement of that state of facts entitles the plaintiff to a decree dissolving the bonds of matrimony. The defendant was not served with process in Kentucky, nor did she appear in the action, and a judgment of divorce was obtained by the husband in Kentucky in 1893. Subsequently the wife began the action in the state of New York for a limited divorce upon the ground of cruel and inhuman treatment, and in this action the decree of the Kentucky courts granting the absolute divorce was pleaded in bar of the wife's action. The principal question presented upon the appeal was whether the Kentucky decree was a bar to the action, Mary G. Atherton attacking the decree on the ground that it was entered by a court having no jurisdiction of her person; she being at the time the Kentucky action began, and the decree entered therein, a resident of the state of New York. On the other hand, the defendant in that action, Peter Atherton, insisted that his wife was at the time referred to a resident of Kentucky, and consequently bound by the decree.

Upon this issue the courts of the state of New York decided in favor of the wife. In the Court of Appeals opinion, it was said:

"The learned counsel for the defendant from Kentucky argued with great earnestness and ability that the matrimonial domicile of the wife is that of her husband, and consequently we are compelled by the Constitution of the United States to give full faith and credit to the decree in her husband's favor. In view of the fact that we have a finding fixing the wife's domicile in this state, we are of the opinion that the Kentucky decree is void as to her, under the law as well settled in this jurisdiction. * * * It is undoubtedly true that the matrimonial domicile of the wife is that of her husband, but this general rule has its exceptions. In this case we have the finding that the plaintiff was justified in leaving her husband, and that the sole reason for so

doing was his cruel and inhuman treatment. \* \* \* In the case at bar, we have the undoubted right of the plaintiff to change her domicile under this rule, followed by the finding that she did so change it to the state of New York. It has been held in many cases that the jurisdiction of the court of another state, in which judgment has been rendered, is always open to inquiry by the courts of this state, and if that court has exceeded its jurisdiction, or has not obtained jurisdiction of the parties, the proceedings are void. \* \* \* We have carefully examined the evidence, and have reached the conclusion that the findings of the trial court as to the issues of domicile of the plaintiff and the cruel and inhuman treatment by defendant of his wife are not without evidence to support them, and, because of their affirmance by the General Term, they are binding upon this court. It therefore follows upon the facts and the law that the Kentucky judgment is not a bar to this action."

This case went to the Supreme Court of the United States upon the question raised by the refusal of the courts of this state to accord full faith and credit to the Kentucky judgment and to which it was claimed to be entitled by the defendant, Peter Atherton. In that court the case was reversed, and the effect claimed for the Kentucky judgment sustained.

The court carefully examined a large number of cases as bearing upon this vexed question, and points out that it is not a case where one of the parties leaves the state of the matrimonial domicile, and obtains a residence in another state, and then obtains a decree of divorce, in which case the question of the validity of the divorce is open to question because of the lack of the jurisdiction of the court over the defendant, owing to lack of personal service, and says:

"This case does not involve the validity of a divorce granted on constructive service by the court of a state in which only one of the parties ever had a domicile, nor the question to what extent the good faith of the domicile may be afterwards inquired into. In this case the divorce in Kentucky was by the court of the state which had always been the undoubted domicile of the husband, and which was the only matrimonial domicile of the husband and wife. The single question to be decided is the validity of that divorce, granted after such notice had been given as was required by the statutes of Kentucky. \* \* \* The husband always had his domicile in Kentucky, and the matrimonial domicile of the parties was in Kentucky. On December 28, 1892, the husband filed his petition for divorce in a court of appropriate jurisdiction in Kentucky, alleging an abandonment of him by the wife in Kentucky, and the continuance of that abandonment for a year, which was a cause of divorce by the laws of Kentucky. His petition truly stated upon oath, as required by the statutes of Kentucky, that the wife might be found at Clinton, in the state of New York, and that at Clinton was the post office nearest the place where she might be found. As required by the statutes of Kentucky, the clerk thereupon entered a warning order to the wife to appear in 60 days, and appointed an attorney at law to represent her. The attorney on January 5, 1893, wrote to the wife at Clinton, fully advising her of the object of the petition for divorce, and inclosing a copy thereof, in a letter addressed to her by mail at Clinton, and having printed on the envelope a direction to return to him, etc. \* \* \* And on March 14, 1893, the court, after taking evidence, granted the husband an absolute decree of divorce for his wife's abandonment of him. The court of New York has indeed found that the wife was 'not personally served with process within the state of Kentucky, or at all.' It may be doubted whether this negatives her having received or had knowledge of the letter sent to her by the attorney in Kentucky January 5, 1893, six days before she began her suit in New York. But, assuming that it does, the question in this case is not whether she had actual notice of the proceedings for divorce, but whether such reasonable steps had been taken to give her notice, as to bind her by the decree in the state of the domicile. \* \* \* The court in New York found

that the wife left the husband and went to Clinton with the purpose and in-tention of not returning to the state of Kentucky, but of permanently residing in the state of New York, and that this purpose and intention were under-stood by the husband at the time, and were contemplated and evidenced by the agreement executed by the parties in Kentucky, October 10, 1891. * * * We are of the opinion that the undisputed facts show that such efforts were required by the statutes of Kentucky, and were actually made, to give the wife actual notice of the suit, in Kentucky, as to make the decree of the court there, granting a divorce upon the ground that she had abandoned her hus-band, as binding on her as if she had been served with notice in Kentucky, or had voluntarily appeared in the suit. Binding her to that full extent, it estab-lished beyond contradiction that she had abandoned her husband, and pre-cludes her from asserting that she left him on account of his cruel treatment. * * * To hold otherwise would make it difficult, if not impossible, for the husband to obtain a divorce for the cause alleged, if it actually existed. The wife not being within the state of Kentucky, if constructive notice, with all the precautions prescribed by the statutes of that state, were insufficient to bind her by a decree dissolving the bond of matrimony, the husband could only get a divorce by suing in the state in which she, was found, and by the very fact of suing her there he would admit that she had acquired a separate domicile (which he denied), and would disprove his own ground of action that she had abandoned him in Kentucky."

The rule laid down in the Atherton Case applied to the case at bar makes the decree of divorce granted in the husband's favor in the state of Vermont good and binding upon the wife, for the reason that the matrimonial domicile of both was at St. Albans, in the state of Ver-mont, at the time the husband commenced the action against her, and at the time of the service of the summons upon her at the place where she was temporarily sojourning in the state of New York. In other words, the legal domicile of the wife was in the state of Vermont at the time of the husband's suit in that state, and at the time of the service of the summons, as well as at the time of the rendering of the judgment in the husband's favor, and that fact conferred jurisdiction upon the Vermont court, even though the service of the summons took place upon the wife after she had departed from that state. The fact that she left her home and her husband in the state of Vermont, and went into the state of New York, no matter what her purpose was, did not change her matrimonial domicile. That continued to be at the place of the old home, where the husband was located in the state of Vermont, and where they together had resided for several years.

To this same effect was the decision of the United States Supreme Court in the case of Bell v. Bell, reported in 181 U. S. 175, 21 Sup. Ct. 551, 45 L. Ed. 804, in which it appeared that the parties were mar-ried at Bloomington, Ill., and lived thereafter as husband and wife at Rochester, N. Y., and afterwards at Buffalo, N. Y. In 1882 the plain-tiff went to Bloomington to visit her mother, and, in her absence, the defendant packed up her wearing apparel and other property in trunks, and stored them preparatory to sending them to her at Bloomington. In September, 1882, the plaintiff, accompanied by her mother, returned to the defendant's house and stayed three or four days, and then left for Bloomington, after which time the plaintiff and defendant did not live together, and the plaintiff always claimed her residence as being at Buffalo.

On January 8, 1895, the court of common pleas, Jefferson county, Pa., granted to the husband on his petition filed April 9, 1894, alleging that he had been for a year a citizen of the state and a resident of the county, a decree of divorce from the bond of matrimony for her desertion, which under the laws of Pennsylvania was a ground for dissolving the marriage. The subpœna in that action was not served personally upon the wife, but was served by publication according to the laws of Pennsylvania, and she received through the mail a copy of the subpœna, and of the notice of the examiner that he would attend to the duties of his appointment on December 14, 1894, at his office in Brookville, in Jefferson county, Pa. She did not appear in person or by attorney, and judgment was rendered against her by default. At the beginning of that action and the rendering of the decree, the wife was a resident of the state of New York, and the husband was not a bona fide resident of the state of Pennsylvania. The court said:

"The question in this case is of the validity of the divorce obtained by the husband in Pennsylvania. No valid divorce from the bond of matrimony can be decreed on constructive service by the courts of a state in which neither party is domiciled. And by the law of Pennsylvania every petitioner for a divorce must have had a bona fide residence within the state for one year next before the filing of the petition. The recital in the proceedings in Pennsylvania of the facts necessary to show jurisdiction may be contradicted. * * * The referee in this case has not only found generally that at the time of those proceedings the wife was a resident of the state of New York, and the husband was not a bona fide resident of the state of Pennsylvania, but has also found that on January 31, 1894, some 10 weeks before he filed his petition in Pennsylvania, he described himself under oath, etc., * * * as a resident of the state of New York. Upon this record, therefore, the court in Pennsylvania had no jurisdiction of the husband's suit for divorce because neither party had a domicile in Pennsylvania, and the decree of divorce was entitled to no faith and credit in New York or in any other state."

The effect of these latest decisions is that the power of a court to render a judgment of divorce or separation, binding in other states, depends upon the domicile of the parties to the action, being legally within the state where the decree is rendered, in which case the service by publication or substituted service allowed by the laws of that state is sufficient to give jurisdiction over the other party to the action, and that where the matrimonial domicile is established in such state, notwithstanding the fact that one of the parties abandons the other and leaves such jurisdiction, the court still has power to bind that party by its decree in such manner that full faith and credit must be given to such judgment by the courts of other states. Where, however, one of the parties to the marriage leaves the matrimonial domicile and acquires a residence in some other state, and there obtains a decree of divorce, it is not binding or effective outside of that state.

The answer in this case which is demurred to sets forth in substance that the matrimonial domicile of the plaintiff and defendant was in the state of Vermont, and that they had resided there together in good faith, making that place their home for several years, and that then the plaintiff herein abandoned this defendant, whereupon the defendant brought his action in that state, which was the matrimonial domicile of both parties, and served the summons in accordance with the

laws thereof, and that thereafter a judgment of absolute divorce in that action was duly rendered in favor of the defendant herein against his wife, the plaintiff herein.

That judgment, it seems to me, authorized the defendant herein to marry again, and is a complete bar to the present action. The plaintiff's demurrer, therefore, to the defendant's answer is overruled, with costs.